Patrick WASH, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 3–480A97.

Court of Appeals of Indiana, Third District.

Aug. 21, 1980.

D. Gregory Nicosia, Hammond, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Patrick Wash guilty of robbery while armed with a deadly weapon.[1] Wash was sentenced to the Indiana Department of Correction for a period of ten years.

On appeal, Wash raises four issues for our review:

(1) Was there sufficient evidence to support his conviction?

(2) Did the trial court err by admitting State's Exhibit "1," a stocking cap, into evidence?

(3) Did the trial court err by admitting rebuttal testimony of a witness who testified during the State's case-in-chief?

(4) Did the trial court err by denying Wash's motion for a new trial in light of newly discovered evidence?

We affirm.

## I.

### Sufficiency of Evidence

Wash contends that there was insufficient evidence to sustain the jury's verdict because the State failed to prove that he took property "from another person or from the presence of another person" and that the property was taken "by using or threatening the use of force," as required by IC 1971, 35-42-5-1 (Burns Code Ed., Repl. 1979). When the sufficiency of the evidence is challenged, this Court will consider only that evidence which is most favorable to the State with all logical and reasonable inferences which may be drawn therefrom. The judgment will be affirmed if there is

---

1. IC 1971, 35-42-5-1 (Burns Code Ed., Repl. 1979)—Robbery—

   "A person who knowingly or intentionally takes property from another person or from the presence of another person:

   (1) by using or threatening the use of force on any person; or

   (2) by putting any person in fear;

   commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon, and a Class A felony if it results in either bodily injury or serious bodily injury to any other person."

substantial evidence of probative value that supports the jury's verdict. This Court cannot weigh the evidence or judge the credibility of the witnesses in its review. *Scott v. State* (1980), Ind.App., 404 N.E.2d 1190, 1193–94.

The evidence most favorable to the State reveals that Wash entered Alyse LaMonte's apartment and hid in the closet of the bedroom while she was out of the apartment. When LaMonte returned to her apartment and entered the bedroom, Wash jumped out of the closet and placed a knife against LaMonte's back. LaMonte immediately fell on the bed. Wash stood over LaMonte with the knife in his hand and demanded that she remove her clothes. Wash then cut her right breast with the knife. As LaMonte stood up to remove her clothes, she ran from the apartment to her neighbor's apartment. While standing at her neighbor's door, LaMonte saw Wash leave the apartment with her purse which had been laying on the bed during the attack.

Wash claims that the evidence does not establish that he took the purse while in LaMonte's "presence" because she was not in the apartment during the actual taking. Wash asserts that a strict construction of the robbery statute requires the immediate or actual presence of the victim to the taking of the victim's property. This argument is without merit in light of the recent case of *Paulson v. State* (1979), Ind.App., 393 N.E.2d 211, in which "presence," as it pertained to the robbery statute then in effect, was defined as follows:

> " 'Presence', within the rule that a taking of property from the presence of another may constitute a robbery, means a possession or control so immediate that violence or intimidation is essential to sunder it. *A thing is in the presence of a person, with respect to robbery, which is so within his reach, inspection, observation, or control that he could, if not overcome by violence or prevented by fear, retain his possession of it.*" (Original emphasis).

**2.** The defendant's conviction was reversed on other grounds in *Paulson.* The court nevertheless addressed the "presence" issue because of

*Paulson, supra,* at 213, *quoting* 77 C.J.S. *Robbery* § 9 (1952). The facts of *Paulson* are nearly identical to those in the present case. The victim was attacked in her automobile by the defendant. As she was being dragged from her automobile, the victim escaped from her attacker and fled to a nearby house. The defendant immediately left. The victim later discovered that her purse which had been in the automobile was missing. It was established at trial that the defendant took the purse. The defendant contended that the taking of the purse did not occur within the presence of the victim. The Court of Appeals rejected the defendant's contention and concluded that the attack caused the victim to flee from her automobile, thus resulting in an involuntary relinquishment of her purse. A taking of property under such circumstances was held to be within the presence of the victim.[2]

■ The taking of LaMonte's purse was likewise done in her presence. The violence and intimidation directed toward LaMonte by Wash caused her to relinquish control of her purse. Such conduct, when coupled with a subsequent taking, is sufficient to constitute a taking within the presence of the victim. This Court rejects the narrow interpretation of the robbery statute urged by Wash. The victim's immediate or actual presence to the taking of property is not required. *Accord, People v. Smith* (1980), 78 Ill.2d 298, 35 Ill.Dec. 761, 399 N.E.2d 1289; *People v. Larson* (1980), 82 Ill.App.3d 129, 37 Ill.Dec. 730, 402 N.E.2d 732.

■ Wash's second contention concerning the sufficiency of the evidence is that the State failed to prove that force was used in the taking of the purse. This argument must be dismissed summarily in view of the evidence in the record that Wash brandished a knife during the attack and used it twice on LaMonte. The use of force caused LaMonte to flee, thus enabling Wash to take the purse without further use of force.

its likelihood of repetition on retrial of the matter.

## II.

## Admissibility

Wash contends that the trial court erred by admitting into evidence a red and blue stocking cap which LaMonte identified as the cap worn by Wash during the attack. LaMonte returned to her apartment for the first time after the robbery on January 17, 1979, and found the cap in the closet of her bedroom. She notified the police immediately of her finding, but the police did not pick up the cap until January 31, 1979. At trial, Wash objected to the admission of the cap into evidence because LaMonte "obviously didn't know where [the cap] was" for a week after the attack. Wash asserted that the one week lapse in time between the robbery and the finding of the cap was a fatal defect rendering the cap inadmissible because a realistic threat of tampering or substitution existed. In his brief, Wash characterized the alleged error in admitting the cap into evidence as the State's failure to establish a proper "chain of custody" foundation.

■ The error raised by Wash is not a chain of custody issue. A chain of custody foundation is not required for the period before the evidence came into the possession of the police. *Williams v. State* (1978), Ind., 379 N.E.2d 981, 984; *Brown v. State* (1976), 168 Ind.App. 440, 442, 343 N.E.2d 790, 791. The State has an obligation to establish a proper chain of custody foundation only from the point in time when the police obtain possession of the challenged item to the moment the State seeks to introduce that item into evidence at trial.[3] *Thornton v. State* (1978), 268 Ind. 456, 460, 376 N.E.2d 492, 494. The admissibility of an item is predicated upon connecting the item to the defendant through direct testimony and demonstrating that the item is relevant to the issues of the case. *Williams*

v. *State* (1979), Ind.App., 398 N.E.3d 674, 677. An item that tends to connect the defendant to the commission of the crime is relevant and therefore admissible. *Hill v. State* (1979), Ind., 394 N.E.2d 132, 134. The fact that the connection of the item to the defendant is inconclusive or slight only goes to the weight of the evidence and not to its admissibility. *Johnson v. State* (1980), Ind., 400 N.E.2d 132, 133; *Carman v. State* (1979), Ind., 396 N.E.2d 344, 346; *Smith v. State* (1974), 160 Ind.App. 622, 629–30, 312 N.E.2d 896, 901. Positive proof of authentication of an item is not a prerequisite to its admissibility. *Morris v. State* (1979), Ind. App., 397 N.E.2d 1056, 1057.

■ Based on the preceding cases, the State was not required to establish a chain of custody foundation for the period before the cap came into the possession of the police. A sufficient foundation was established when LaMonte positively identified the cap as that worn by her attacker. The cap was thus connected to Wash, and it was found relevant for the purpose of corroborating LaMonte's identification of her attacker. The delay in finding the cap was a matter for the jury to weigh with subsequent evidence concerning the cap. The trial court did not abuse its discretion by admitting the stocking cap into evidence.

■ In his brief, Wash also contends that the State failed to properly establish a chain of custody of the stocking cap from the time it came into the possession of the police on January 31, 1979, to the day of trial. However, Wash waived any error that may have been committed by failing to object to the admission of the cap on that particular ground at trial and in his motion to correct errors. Grounds for objection to the admission of evidence asserted on appeal may not differ from those stated at trial. *Smith v. State* (1979), Ind., 397

---

**3.** Recent cases have required a showing of a complete chain of custody "from the original receiver to the final custodian" of the item. *Williams v. State* (1979), Ind., 387 N.E.2d 1317, 1319; *Coker v. State* (1980), Ind.App., 399 N.E.2d 857, 858–59. "Original receiver" is limited to law enforcement personnel and should

not be construed to include the first possessor of an item who is not affiliated with the police. Both *Williams* and *Coker* impose a chain of custody requirement only for "seized" items, which necessarily implies some form of police possession of the challenged items.

N.E.2d 959, 963; *Weaver v. State* (1980), Ind.App., 404 N.E.2d 1180, 1181.[4]

## III.

### Rebuttal Testimony

The third error raised by Wash is that the trial court should not have permitted Betty Hudson to testify as a rebuttal witness to matters that should have been presented during the State's case-in-chief. Hudson, who was the director of the 151st Recreational Center, stated during the State's case-in-chief that Wash had been at the Center on January 24, 25, and 26 of 1979, to play basketball. LaMonte first identified Wash as her attacker on the 26th day of January at the Center while she was working for Hudson. Wash denied being at the Center on any of those dates. The State then sought to rebut Wash's denial of being at the Center by introducing into evidence the sign-up sheets used at the Center on those dates. Everyone who used the facility was required to sign the sheets. The name "Bucky," which Wash was generally known as, appeared on all three sign-up sheets. A sample of Wash's handwriting was introduced for the purpose of comparison. Wash contended that this evidence prejudiced him in that the State was afforded the opportunity to repeat and re-emphasize evidence that had been elicited during the State's case-in-chief.

The order of trial proceedings in criminal cases is controlled by IC 1971, 35–1–35–1 (Burns Code Ed., Repl.1979), which provides in part:

"Second. The prosecuting attorney shall then offer the evidence in support of the prosecution and the defendant shall then offer the evidence in support of his defense.

"Third. The parties may then respectively offer rebutting evidence only, unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon their original case."

The trial court, in the interest of justice, may permit a party to reopen its case under IC 35–1–35–1 to offer evidence that should have been presented during the party's case-in-chief. *Sims v. State* (1977), 267 Ind. 215, 221, 368 N.E.2d 1352, 1355. This Court has stated:

"[I]t is within the sound discretion of the trial court to permit a witness to testify during rebuttal regarding a matter which is not in rebuttal but is related to the State's case in chief, and the irregularity in so doing will not be treated as reversible error unless the defendant was prevented from presenting rebuttal evidence thereto." (Citations omitted.)

*Raymer v. State* (1978), Ind.App., 381 N.E.2d 109, 112, *quoting Trinkle v. State* (1972), 153 Ind.App. 524, 529–30, 288 N.E.2d 165, 168. This Court need not determine whether the introduction of the sign-up sheets was proper rebuttal evidence.

Wash was provided with the opportunity to refute the State's rebuttal evidence on surrebuttal, but chose not to do so.

## IV.

### Newly Discovered Evidence

Wash contends that the trial court erred by not granting his motion for a new trial based on newly discovered evidence offered by Wash at the hearing on the motion to correct errors. The newly discovered evidence consisted of Ivory Kilpatrick's testimony that LaMonte had told her approximately one month after the robbery that her attacker did not hurt her and that she was never in fear during the attack. La-

---

**4.** Assuming that Wash had properly raised a chain of custody objection at trial, Wash would still be precluded from contending that the trial court erred by admitting the cap without a chain of custody foundation. Such a foundation for the period after the police gained possession of a challenged item is not required where the item is hard, physical evidence whose characteristics are capable of eyewit- ness identification and not susceptible to tampering or substitution. *Parks v. State* (1979), Ind., 389 N.E.2d 286, 290; *Wolfe v. State* (1978), Ind., 383 N.E.2d 317, 318; *Johnson v. State* (1977), 267 Ind. 415, 421, 370 N.E.2d 892, 895. The cap in the present case would fall under this exception to the chain of custody rule.

Monte did not mention her attacker's name during the conversation. Kilpatrick knew Wash and is related to him, but she did not realize that Wash was LaMonte's attacker until Wash's trial was completed. Wash contends that Kilpatrick's testimony, if given at trial, would have negated two essential elements of the crime of robbery—using or threatening the use of force and putting the victim in fear.

■■■■■ When a new trial is requested based upon newly discovered evidence, the moving party must establish:

"(1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result."

*Tessely v. State* (1978), 267 Ind. 445, 453, 370 N.E.2d 907, 912, *quoting Emerson v. State* (1972), 259 Ind. 399, 407, 287 N.E.2d 867, 871–72. A motion for a new trial predicated on newly discovered evidence is viewed with disfavor, and the denial of such a motion will be reversed only if the trial court abused its discretion in concluding that a different result upon retrial would not have been probable. *Helton v. State* (1980), Ind., 402 N.E.2d 1263, 1267.

■■■■■ No abuse of discretion has been shown in the present case. First, Wash is mistaken that Kilpatrick's testimony would have negated two essential elements of the crime of robbery. In a robbery prosecution, the State is not required to prove both the use of force (or the threatened use of force) and putting the victim in fear. *Perry v. State* (1980), Ind.App., 401 N.E.2d 792, 794. The disjunctive is used in IC 35–42–5–1 requiring that the State prove that the defendant used or threatened the use of force *or* placed the victim in fear. Even if LaMonte was not afraid or hurt during the attack, substantial evidence was before the jury from which it could conclude that

Wash used or threatened the use of force in perpetration of the crime. The statement that Wash "didn't hurt" LaMonte does not necessarily mean that force was not used or threatened or that LaMonte was not afraid. The recent case of *Baker v. State* (1980), Ind., 402 N.E.2d 951, held that a victim's testimony that she was "not really" afraid during an armed robbery did not preclude the defendant's conviction where there was other evidence from which the jury could infer that the victim was put in fear. Thus, Kilpatrick's testimony would not have negated essential elements of the crime of robbery. The trial court properly exercised its discretion in concluding that a different result upon retrial was improbable.

We find no error. The judgment of the trial court is affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.